Case No. 3018-0038, Nationstar Mortgage, LLC, affidavit by Rosa Tuma Allen v. Roland Sanders, Keith Sanders, and Glenn Sanders, et al. Appellants by Tina Siporna Mr. Siporna Good morning. Counsel, may it please the Court, Ms. Siporna, Mr. Allen, Mr. Allen, Mr. Keith, and Glenn Sanders, and the court orders, defendants and counterfeiters below, Senator Keith Robertson from the Supreme Court Rule 3048. Before I begin my argument, I did want to point out an error in the brief that I filed to the Court. Because amped trial modification did occur after the Sanders were three months in arrears and the subject was only first discussed in May of 2009, the Sanders trial period payments could not have begun in January of 2009. That was an error in the brief and I'd like to correct that. I'd like to address a number of issues this morning. First, the permanent loan modification that my clients were granted in May of 2010. That permanent loan modification was approved. It was admitted into evidence as plaintiff's exhibit 3. It appears in our appendix at page 90. In pertinent part, it called for the Sanders to make principal and interest payments of $2,312.28 a month, plus escrow. The plus escrow phrase was left undefined. No escrow payments, generally taxes and insurance, right? And those figures routinely change from year to year, right? Cost of insurance goes up, taxes go up. It may fluctuate, yes. This permanent loan modification agreement didn't even give an essence of what they were and didn't set forth what they were currently. It didn't say that there was something to change. It just said plus escrow. Now, there was evidence that certain telephone conferences between representatives of NationStar and Donna Sanders took place. Regarding this undefined term, she quite rightly wanted to reduce the writing and NationStar never did that. But as we'll see, even if we take into account it's true, NationStar's testimony deduced at trial from Eric Lacy that the amount that should have been made every month was $4,048.76. Even for the sake of argument, we claim that it's true. When we look at the next two documents, the notice of default that was sent out June 19, 2010 that claimed as of June 18, 2010, and a rearage of $13,152.46, even Lacy had to admit under cross-examination that there was no way when the homeowners were starting with a clean slate as of the beginning of the permanent loan modification in May 2010, that Sanders claimed a rearage could have possibly been that high. We cite the record of 106 in the attendance. I would ask the court to bear with me. I'm going to go through some numbers. If the court hears nothing else this morning, it will look at page 34 of our LM3 to claim short of giving NationStar the benefit of all doubt, as of the date the acceleration was sent out, that was August 4, 2010. It claimed an amount of $14,832.37. That set forth that page 34 of our brief. If you look at the breakdown of the numbers with the citations to the record, the most they could possibly claim as a shortage would have been $8,357.95. Yet, the notice of acceleration, which is a condition proceeding to foreclosure, claimed that they owed $14,832.37. Now, in their response at page 9, they say that we're not taking into account an advance for taxes that was made during this loan modification period of $563.68. Or a tax payment that was advanced by NationStar of $5,296.83. Again, comparing page 34 of our brief with those figures at page 9 of their response, they're saying that those advances needed to be added to the arrearage of $8,357.95. If you add the $563.66 and the $5,296.83, what you come up with is a total amount of $14,218.44. Given them the benefit of the doubt that these advances should have been added in the notice of acceleration, the notice of acceleration they sent out was still inflated by $613.93. And so, what's the effect of that? The effect of that is you have a failed condition proceeding to foreclosure action. It says that they sent out an acceleration letter that the arrearage amount has to be exactly the penny? Yes. Kathy Dank versus Esotero states that because of the condition proceeding, because they drafted the mortgage, paragraph 22 of the mortgage, because they drafted the notice of acceleration, it has to be strictly construed. If it's a condition proceeding to foreclosure, it requires strict scrutiny. It need not, this breach of condition proceeding to foreclosure need not be pleaded as an instrument of defense. And we cite City Mortgage versus Wachowski. Strict compliance with paragraph 22 of the mortgage compared to the notice of acceleration. It must have strict compliance. The paragraph 22 of the mortgage was admitted into evidence as plaintiff's exhibit 6. It appears in our appendix at page 105B. And the court can compare that to the notice of acceleration that we've been talking about. Again, the notice of acceleration is plaintiff's exhibit 6. It appears in our appendix at page 105A. So, if you can compare those two, the amount of demand that was inflated, even given things to serve as benefit of all doubt, both in the circuit court as well as their response brief. As we set forth in our brief, there were five other points. Let me ask you, are you abandoning this subject matter jurisdiction argument? I'm not. I wanted to address this issue because the court really need not reach like a subject matter jurisdiction if it looks as a failed condition proceeding. So, I wanted to make sure I got that out. Okay. Well, you've got it out. Okay, you've got it out. So, now let's talk about your subject matter. Let's talk about that. Okay. All right. Page 27 of 34 of our brief, we set forth the other defects in the notice of acceleration. Okay. Turning to the lack of original jurisdiction, which is the argument that we made. Basically, the timeline is that on June 15, 2007, Sanders pledged a mortgage to Homecoming Financial LLC to secure their property in Crete, Illinois. Roland Keith signed a promissory note to Homecoming Financial. Now, the Illinois Supreme Court case of ABM Amarillo v. McGann is where I'd like to start. In that case, the Illinois Supreme Court held that mortgage foreclosure cases are quasi-inert proceedings that are ex-contractive in nature. These are really in the nature of breach of contract actions against the mortgages of blood and chancery because they're directed, the enforcement of the notice by way, obviously, of directing foreclosure against the property, foreclosing the mortgage. It's a security interest against the property. The reason that's critically important to my analysis of the lack of original jurisdiction is that in any commercial case where you've got a contract, such as mortgage foreclosure actions, an essential element of the plaintiff's case in chief is that they have standing to sue. This implicates the original jurisdiction of the court. Well, I think it deals with what you just said, standing, not jurisdiction. We cite, in the state of Ferguson, a number of cases in our brief. Let me ask you this. Did the bank attach the promissory note to the complaint? Yes. And the note that they attached was neither made payable to them, wasn't endorsed by them, wasn't endorsed in court. Is it the law that possession of that note is prima facie evidence of ownership of the note? There goes Stanley. It is. The Cornado case authored by Mr. O'Brien and his district involved a similar challenge. However, in that case, the affirmative defense of a lack of standing was stricken by the circuit court. In our case, on November 18, 2014, we filed in the circuit court the law, amended affirmative defenses and counterclaims that allege a lack of capacity, a lack of standing. Additional affirmative defenses, contractual performance, promissory stop law, and the end of fraudulent infeasement. Counterclaims of conversion and violation of the Illinois Consumer Fraud Deceptive Business Practices Act. None of those affirmative defenses or counterclaims were answered. None of them were challenged. No motion to strike was ever brought. Cornado is distinguishable on those grounds. I believe that the cases that talk about the prima facie case of standing by attaching a note have their origin really in mortgage electronic registration systems versus bonds. They say if you don't raise standing as an affirmative defense, you waive it. Well, in this case, we did actually raise it. The challenge was never answered. I think it should be deemed admitted against nature's sake. But as set forth in our reply brief, we talk about the underpinnings of bonds, and they expanded cases that had absolutely nothing to do with what's essentially breach of contract action, where the plaintiff's right to sue on the contract, either a party to it or a successor in interest to it, that's an essential element of their case in chief, and it's not something that can be waived. Two minutes, please. The fact that the note was not made available to them, wasn't endorsed to them, wasn't endorsed in plaint, the note that's attached to the complaint, that contradicts their prima facie case when they're filing their complaint. The view of versatility of Melbourne, as the court notes, where the exhibit is attached to the complaint, contradicts the allegations of the complaint in general that the exhibit is in control for all purposes. Standing is determined when a lawsuit is filed. It's inextricably linked to the original jurisdiction of the court and whether a justiciable issue has been presented. Well, given the Supreme Court, I mean, 1944, say possession of bearer of paper is prima facie evidence of ownership of it. It wasn't bearer of paper. It wasn't endorsed in plaint. It was endorsed at GMAC. GMAC was the holder. And by the way, I should point out that Plaintiff's Exhibit 5, the collection history profile, shows that on January 9th, a Fannie Mae payment reminder notice was mailed out. It's in the Supplemental Exhibit, page 90. Plaintiff itself proved a lack of standing because Fannie Mae owned the loan as of January 9th, 2009. The lack of capacity pleaded as an affirmative defense stated exactly that, that Nation Star isn't the owner of the indebtedness of Fannie Mae is. And that was proven in trial. So when they argue it's an affirmative matter that we have to establish, it was established by their own exhibit. So they never owned this. There was a complete lack of original jurisdiction. They never imbued the court with original jurisdiction because they didn't present the justiciable issue to the court. I do have five minutes left. You do? Okay. Thank you. Good morning, Your Honor. Good morning, Your Honor. In the case of court, my name is Rosalyn Allen, and I represent Nation Star on this appeal. I would first like to start out with the subject matter jurisdiction argument that I consider to be the principal argument because if the court has no jurisdiction, there's no, everything else is for want of a lawyer. The problem, the fundamental flaw here is that as is customary, sometimes when these issues are raised, there's a conflation between what it means to have standing and what it means to have subject matter jurisdiction. Those two are separate and independent concepts. In fact, this analysis is fairly routine. The most recent pronouncement from the appellate court is from the first district from July of this year in a non-published order. But I think that shows something, that it's something that is so commonplace that it may not even be found itself in a published opinion. But we do have published opinions that talk about this. And they very, very clearly spell out that defense argument here is nothing more than based on an outdated consideration or conception of what it means to have subject matter jurisdiction from the previous Constitution. The current Constitution, every court has original jurisdiction over justiciable matters. So what does that mean? Well, you have to have a factual controversy. It can't be moved. Standing is an element of justiciability, but it is not a requirement of justiciability. And that's where defense fails. The fact that there might be a defective pleading does not remove jurisdiction from the court. So what that leaves is that you may have a defective pleading, and that's still a justiciable matter. So there's still subject matter jurisdiction. So that argument fails right out the gate. But why do we have to make that argument? Or why is that argument being made? I think that's the bigger question that needs to be addressed. And the reason for that is because the standing argument is waived. The only way to get around that is to pigeonhole it into a subject matter argument, which is never waived. But this is a pure standing. It's can a nation start soon? That issue is waived for several reasons. First, while it was pled, admittedly pled, much later in the game, but it was pled, no proofs were ever advanced by defendant. Defendant wants to sit back and say, well, look what happened at trial. But if we look what happened at trial, there was never an argument advanced at trial that, oh, judge, you should dismiss this because there was no jurisdiction or there was no standing. To the contrary, what happened at trial was that no endorsement blank was admitted into evidence without objection. So that eliminates any standing issue that could have been raised or maybe might have been raised. But the point is that standing, while pled, has never advanced, no proofs were ever advanced, and defendant all but abandoned that issue when they admitted or agreed to the admission of a no endorsement blank without objection at trial. The other arguments that were raised with respect, oh, and I do want to get to one thing. There was a reference by counsel in his presentation that Nation Star somehow failed to respond to these affirmative offenses. That's actually inaccurate. Nation Star did file a motion to file an answer in standard to the amended affirmative offenses and counterclaims. That was done on May 10, 2017. That's at the record at C1040 through 1049. And there was also another motion for summary judgment that was filed by Nation Star around that same time period. Excuse me, the numbers in the letter would be right after the 1050s. And there was a motion to dismiss the counterclaim that accompanied the motion for summary judgment. So to say that Nation Star took no action with respect to this pleading is inaccurate and belied by the record. Now turning to the other argument relating to the sufficiency of the evidence that was submitted to the court about the default. There's no need for the court to go back and review these numbers and do mathematical equations, because we know now what the whole endgame with that argument was. But that was to introduce for the first time post-trial, this was when it was first raised, this idea that there was a failed condition for senate under the Asituto case. But as we know from the record, this argument wasn't raised at trial. It was never part of any form of defense. And it was actually raised for the first time post-trial in a motion to amend the pleadings to conform to the proofs. The trial court properly denied that. And you know in the briefs before you that that ruling itself is not even before this court, which arguably is the only thing this court can review. But if the court were to consider, which NationStar does not believe the court should or could consider, because issues that are not raised in the trial court should not be raised for the first time on appeal, and to the extent that arguments are raised post-trial, really this court's ability to consider those arguments depends on the sufficiency of the record on that issue. Well, we don't have a record on the sufficiency of the letter. We just have the letter itself. And the letter itself satisfies the requirements under Asituto, which those are that it must notify you of the default, advise you what you have to do to cure it, when that cure must happen by, and the consequences of that cure not happening by the same date. All right. Just hear me just for a second, and let's just say that we are able to consider that letter. So the notice of default, which would be the amount, do you believe that it has to be accurate? It has to be accurate as of the time that it's sent. So it's accurate as of there's a discrepancy or dispute about the numbers or even the date of the default, because I think the complaint references July 2010, whereas the letter says June 2010. But let's remember that the note or the letter was sent in August. And in August, the loan was due for June 2010. And then for the accuracy piece about the numbers, it should be consistent with what is the reality at that time, which is there was defaults, and then the loan was accelerated. The acceleration will include the late fees through the length of the loan that existed out there. So the discrepancy that we're talking about, the $600 or something, that is actually probably – Well, he didn't say initially, he said if he gave you credit for everything, it would be $600. But I don't think he says it's $600. But when you talk in your brief, when you discuss, you don't use amounts. So when it's modified in May, and there was testimony that that wipes the slate clean. But what you're saying is when that letter gets sent out in August, that slate that was wiped clean in May is no longer wiped clean. Well, the slate that's wiped clean is – because when you do the loan modification, there's a conversion balance, there's the new balance, and what's going to be accruing interest. But when – but if that loan modification is for whatever reason defaulted on, or maybe not ever accepted, resulting in a default, then the loan is accelerated. And so you will have the – whatever other costs were advanced, such as, you know, VPOs, property inspections, late fees, those are included in the life of the loan. Those get accelerated. So I can understand the perception from the borrowers, that I only had to pay $2,300 and whatever for escrow, and I make that one payment, and all of a sudden now you're telling me I'm late. But if we actually look at the history, and I'll just walk you through a bit. Not so much numbers, but the line entries. So the loan modification is effective when you look at the collection or payment history. At line 178, it shows the unpaid balance and the decrease in the interest amount consistent with the loan model. Then you have the loan becoming effective, the model becoming effective in line 181. That's May 2010. Then you show line 183, the 23,12,88 payment. Line 190 is the first effective payment of the 4,048, because there is enough in suspense to make a full payment. So that makes the loan due for June. Then in August, you get the $14,000 arrearage for default amounts, based on that. Then you have line 2010, you have a complete payment again, but that's received in August 30. So then you have additional monies that are advanced, and by the time you have the foreclosure complaint filed in November, that loan is now due for July, because they received a later payment. And then later payments were returned after that. But the point of the acceleration letter, though, is just to alert the borrower of the fact that there was a default. And accuracy to the penny, there's no court that actually says that that is required, but there is some guidance from the First District in this regard as well. But I think where the confusion seems to have come in is that, you say, you know, what is set out in the acceleration letter isn't things due just from May at the modification. Those are things that, upon default, go way back throughout the life of the loan. And I think that that's where, you know, when these people are entering into a modification, that they believed, as the gentleman that even testified said, you know, the slate's wiped clean. And I think there's perhaps a misconception about what the meaning of that is, that they get this notice, and the notice is so much greater than if they are starting with a zero slate or clean slate on May. And I don't know if, you know, how that was followed. I know there's a lot of controversy about what was said over the phone and all of those kinds of things. And then there was some discussion about that you're advancing, you know, S payments and other things. But isn't that prorated throughout the escrow? I mean, those are the escrow payments. Well, those were the escrow payments that were never received, and they were advanced. In fact, when the borrower did make some escrow payments, because she was told, you need to make these payments to cover advances for X and Y, whatever they were. And so that payment was made, it was like $1,100 or something. The point is that, though, for purposes of the loan modification itself, the terms of it were never complied with. Set aside the fact that counsel claims there's an ambiguity because the escrow was not defined or reduced to writing. That would be really an impossible thing to do because the reality is that escrow payments do fluctuate. But they set a standard. I mean, they did a lot of banking. They kind of say, well, there could be a bubble somewhere where you need to, you know, up the escrow. Up or lower it, or they carry it over. But the point is that the terms of the modification itself were never complied with. Payments were supposed to be received by a date certain. They weren't. Payments were supposed to be received principal interest plus escrow, which it wasn't even the borrower. It was the borrower's wife who did all the payments or bills. She made all the payments. And she was told what that was. She just didn't agree with this. But the point is that these were never made. NationStar never received a full payment, never received a timely payment. And because of that, the acceleration level was generated. And the loan was in default. Now, what nobody challenges here is the existence of the default. Nobody is saying there wasn't a default. They acknowledged as much at trial. The only witness to testify acknowledged she never sent in the escrow payments. And so there was never a full payment made. So really, to have the only reason why this issue comes up is so that it's to get into the condition-precedent argument, which would, if accepted, would divest NationStar of the ability to have foreclosed in the first place. So you really have to look at what did the acceleration letter say. And we know from CMI, the City Mortgage v. Haft, which is 2015, Ill Act, 1st, 150459, that the letter is sufficient as long as it sets out the facts of the default, the action needed to cure it, the time they needed to cure it, and the consequences of failing to do so. In that court, in that opinion, the court acknowledged that there can never be an exact amount that's going to be put in there because it's a 30-day letter and things happen over that time period. So if we look and extrapolate the reasoning in Haft, which was to read these letters liberally so that there's lots of certain notices provided, the protection to the borrower is there as long as they receive these basic facts. Then that is sufficient to satisfy the condition-precedent. And then the borrower is able to argue about the facts of the default, whatever default existed, which no one challenged the fact of the default period. I would conclude by saying that they didn't have a default because there wasn't the initial breach is on the part of NationStar because they didn't send them the default. They didn't get the statement of exactly what the breakdown, what the escrow payment was going to be in terms of what the taxes were. I know you say it was told to them over the phone, but this is the insurance, these are the taxes, this is what your monthly payment is going to be. There's a total, but don't they do the loan modification, they get a document because they're required to sign it saying that you know what these payments are for, we are agreeing that we're going to make those payments on your behalf if you make them. So is that document was attached to the mortgage in note? Well, you mean to the loan modification document? Yeah. The loan modification document was the standalone document that provided that it was principal, interest, plus escrow. So it was not spelled out in that agreement. It was not spelled out because of the fact that then it would have to be revised every single time there would be a change in the escrow. The borrowers were advised that each time, each time they were questioned what the escrow was, and it was not a secret. It was not like there was somebody tagging the ball. They knew what the escrow was supposed to be. The payments were not made. The incomplete payments that were made, even those were targeted. So there is a default here. The default was properly accelerated. The proper notice was given under the heft opinion that notice is sufficient. The argument is actually waived because it was not advanced until post-trial, but it can't be a bigger surprise because this is something that is at the forefront or at the beginning. You must satisfy this step before you go forward with your foreclosure. This is something now that happens when you go through a full trial. Before that, we had three motions for summary judgment, two vacatings of the orders of summary judgment. This is not a case where the defendants were deprived of any opportunity to defend against the default. They had ample opportunity. This case has been going on for years, and it is time now, finally, it's been brought to conclusion. And the arguments that are being raised before you are either waived or just flat and correct. And so for those reasons, Your Honors, I would ask that the judgment of Nation Star be done.  Yes, thank you. Thank you. There are a number of issues that I'd like to address briefly. Regarding the original jurisdiction argument that we made, it's not a question of subject matter jurisdiction. It's a question of the act of the original jurisdiction under Article VI, Section 9 of the Illinois Constitution because no justiciable issue was presented in the court like that of civil. Standing in this case, Kansman raises an affirmative defense. Counsel said that on May 10, 2017, they brought a motion for leave to respond to the affirmative defenses and counterclaims. That motion, based on my review of the record, wasn't ever granted. So the affirmative defense lack of capacity stands as admitted against Nation Star as well as the counterclaims. To say that they are somehow taken aback is a surprise that these numbers were inflated and that was never brought up at trial just stands in divorce of the record. If you take a look at the cross-examination of Mr. Lacey, he was extensively cross-examined on the inflated numbers in the notices. Now, there were two notices, again, and it shouldn't be conflated. There was a notice of default on June 19, 2010 that said that there was a $13,152.46 census on June 18, 2010. He was extensively cross-examined on that notice of default. We cite the record at 106 and the appendix at 106. The acceleration letter that was sent out on August 4, 2010, alleged date of default of June 1, 2010, and the amount of $14,832.37. Exhibits were entered into evidence concerning the detailed history of the payments and so forth. That was all before the circuit court, and when you go through the numbers, it was just inflated by almost double. If we, again, give Nation Star the benefit of the doubt and say that advances made during this permanent trial modification period for taxes and so forth, they're still short. They're still short. And again, I would refer the courts to page 34 of our brief and page 9 of the defense response for Nation Star to stand before the court and say on more than one occasion, let's not look at the numbers, belies the problem with their case, that there's a failed condition proceeding here that should have precluded the foreclosure action. And your position, again, on appeal is, does that deprive the trial court of jurisdiction? No, it's two separate issues. It's an issue of a failed condition proceeding for foreclosure. They can't proceed when they've got a failed condition proceeding. The court may have jurisdiction to hear a breach of contract case, but if one side of the staff doesn't... All right. Right, right. Counsel said that Sanders even paid $1,100 for X and Y. Well, exactly. They paid $1,172.62 on May 26, 2010 for mortgage insurance premiums. That wasn't part of the agreement. The agreement is principal and interest real estate taxes, real estate insurance. But when Nation Star gets on the phone and says, oh, by the way, we've taken out an insurance premium on your mortgage payments and we want you to pay that, in good faith, the Sanders paid that. Well, speaking of good faith, your clients knew that there were tax bills on their property, right? Yes. And they knew that there had to be a homeowner's insurance to protect the structure, right? Yes. And they knew somebody had to pay that. Yes. And if they didn't pay it, the bank was paying it, right, to keep the stock leased. Leased with respect to the taxes. And for Nation Star to have the courage of their convictions, let them put it in writing exactly what she needs to pay. She requested that numerous times and it was never done. And if you look at the call history, they tell her one thing and they say, you know what, that's applied from a different account. We're going to reverse that. I mean, there are a myriad of reversals. If you look at the detailed transaction history report, you see a bunch of numbers that are being washed out. There's numerous errors on the property of Nation Star. For her to request it just for writing, I think, is more than reasonable. Well, in whatever payments she made, did she include anything for taxes and insurance? She stayed current on her mortgage all the way through 2009, beginning of 2009. And it was only when she broached the subject in May of getting a loan modification that she was basically told, you know, you've got to be three months or worse. All right, well, that's putting her in jeopardy of being foreclosed on. Well, how about after the loan modification? Did she ever include anything for taxes and insurance? No. I think that the numbers— Two payments of $1,700 or something paid. The payments made, again, at page 34 of her brief, during the permanent loan modification, are set forth there as principal and interest. And it was only to say, by Nation Star, that's a good thing. She was going to be paying principal and interest payments. Now, did they book those as principal and interest payments? No. They put them into a suspense account. And that was number one. So you're saying the bank made a loan modification that would require only payments of principal and interest, and the bank was going to keep— Absolutely. I'm sorry, I didn't mean to speak over you. No. No. The loan modification said principal and interest, you know, plus escrow. Plus escrow. Plus escrow. And did she ever include anything for escrow after the loan modification? One minute, please. No, she paid principal and interest only. But that's what she said with Nation Star. And she never authorized Nation Star to put that into a suspense account to be applied for escrow. That wasn't the agreement. She wanted it confirmed in writing what her escrow payment was going to be, and they never did that. Counsel, the state's been briefed at one point that monthly mortgage payments were settled. There were no monthly mortgage payments admitted into evidence in the case. We have a statement saying that's part of the record as well. I would encourage the court to consider the case of Bank of New York as trustee for Popular Finance Services versus Romero. This is a New Mexico Supreme Court case cited at page 10 of our reply brief that really asks the court to take a look at that case, and it has to do with the lack of standing as an attempted jurisdictional defect, which, quote, may not be waived and may be raised at any stage of the proceedings, even so as to not take out a federal court. I think, again, when you're talking about commercial litigation, we're part of the case in chief. It's been shown that they were part of the contract and were entitled to enforce it. Standing can't be waived. It's an essential element of their case in chief. Thank you. I have a question. I have a final question. When we talk, and I want to make sure I have the terminology correct here, because when we talk about a loan modification, in fact, this is a new loan, right? There's a payoff of the old mortgage and a new loan is constituted. Is that correct? My understanding is when Lacey testified, they start with a clean slate at the beginning. When the permanent loan modification was brought, they started at zero. They're given a payment and taken it forward. In this case, it was left undefined. And whatever arrearage was before that is rolled into the loan and it's placed on the back of the loan. Whether this was broken up into an interest-bearing portion or a non-interest-bearing portion, I don't think is reflected in the record. But they start at zero in May of 2010, and they start making their payments going forward. I hope that answers the court's question. I mean, because the payment here, it says, you know, there's a payoff and a new loan in March of 2010. And it seems like that's when the clock seems to reset that it is all new at that time and that the loan is for $352,857 as principal at that. I'm looking at page 90 of our appendix, and it says the unpaid principal balance is $371,931.50. So it's the unpaid principal balance. And we're to start making payments of principal and interest of $2,312.28 plus the escrow payment, which is $1,005. Thank you. Thank you. Thank you. Thank you both for your arguments here this morning. We'll take this matter under advisement. The rest of this position will be issued.